NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0405n.06

Nos. 08-6099, 08-6271

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 12, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellant/Cross-Appellee, )
)
v. )
) On Appeal from the United States
DANNY LEE PHILLIPS, ) District Court for the Western
) District of Kentucky
    Defendant-Appellee/Cross-Appellant. )
)
)

Before: BOGGS and GILMAN, Circuit Judges; McCALLA, Chief District Judge.[*]

BOGGS, Circuit Judge. Defendant Danny Lee Phillips ("Phillips") pleaded guilty to receiving and possessing child pornography. The district court declined the government's invitation to apply a five-level enhancement under the United States Sentencing Guidelines ("Guidelines"), finding the government had not met its burden of showing that Phillips had distributed child pornography to others. The district court did, however, apply a four-level enhancement because the offense involved images of "sadistic or masochistic conduct or other depictions of violence." The district court refused Phillips's request for a downward departure on account of his depression. The government and Phillips now cross-appeal the district court's sentence. For the following reasons, we affirm.

---

[*] The Honorable Jon P. McCalla, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

## I. BACKGROUND

**A. Underlying Facts**

On October 17, 2007, federal Immigrations and Customs Enforcement agents executed a search warrant at the residence of Phillips, who had been identified as a subscriber to a child pornography website. At that time, Phillips was a 43-year-old Navy veteran with no criminal history living at his parents' home in Louisville, Kentucky.

Phillips cooperated with the agents and agreed to be interviewed. He admitted that he possessed child pornography and showed the agents where to find it on his computer and on several compact discs. In total, Phillips was found to have over 750 images of child pornography, "primarily consist[ing] of young female and/or male children posing nude in [a] manner which exposed their genitalia and/or engaging in sexually explicit acts, both heterosexual and homosexual, with other children and/or adults." Some images portrayed the sexual penetration of children as young as six to ten years of age; others "clearly depicted bondage of young children, [including with] handcuffs." The government alleges that, during the interview, Phillips also admitted that he had *uploaded* child pornography to the Internet and exchanged such images with others. Phillips denies this.

Phillips pleaded guilty, without a plea agreement, to charges of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), and possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). His pre-sentence report calculated his offense level at 37, which assumed a base offense level of 22 and included a three-level reduction for acceptance of responsibility, as well as the following enhancements: (a) two levels because the material involved a prepubescent minor or a minor under age 12, U.S. Sentencing Comm'n, *Guidelines Manual* ("U.S.S.G."), § 2G2.2(b)(2);

(b) five levels because the offense involved more than 600 images, *id.* § 2G2.2(b)(7)(D); (c) two levels because the offense involved the use of a computer, *id.*§ 2G2.2(b)(6); (d) five levels for "[d]istribution [of child pornography] for the receipt, or expectation of receipt, of a thing of value [namely, other child pornography images], but not for pecuniary gain," *id.* § 2G2.2(b)(3)(B); and (e) four levels because "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence," *id.* § 2G2.2(b)(4).

Phillips objected only to the last two of these adjustments (i.e., the "distribution enhancement" and the "sadomasochism enhancement"). Phillips also objected that the pre-sentence report did not include a downward departure pursuant to U.S.S.G. § 5K2.13 on account of "significantly reduced mental capacity" stemming from Phillips's depression.

**B. Testimony at the Sentencing Hearing**

On July 25, 2008, the district judge held a sentencing hearing, where he heard testimony from Special Agent Magin Sacasas ("Agent Sacasas"); Phillips; and Janise Madison-Hill ("Madison-Hill"), a psychotherapist.

**1. *Agent Sacasas's Testimony***

Agent Sacasas testified that he and Special Agent Ron Crawford ("Agent Crawford") had interviewed Phillips on the day the warrant was executed. Agent Sacasas testified that he had asked Phillips if he "use[d] any [online] method for trading child pornography, [such as] e-mail, F-serve, Kazaa, Limewire or other [p]eer-to-[p]eer programs." According to Agent Sacasas, Phillips denied using peer-to-peer programs, but acknowledged using Yahoo Groups and/or Yahoo Messenger "to trade to get some of [the] images" and "upload[ing]" child pornography to others via Yahoo Groups.

Agent Sacasas testified that there was "[no] doubt in [his own] mind that [he was] asking questions and [Phillips] was answering questions about *child* pornography," as opposed to adult pornography. (emphasis added).

Agent Sacasas testified that, while the interview was not recorded and there were no other witnesses, both he and Agent Crawford had taken contemporaneous notes of Phillips's responses to the questioning. Both sets of notes take the form of a series of prepared typewritten questions with handwritten answers. Question #25 states, "Do you use any . . . methods of trading child pornography, for example: email, F-serve, Kazaa, Limewire, or other Peer to Peer (P2P) programs?" Agent Sacasas's notes immediately following that question read, "12 to 15, nude or seminude, used Yahoo Messenger." Agent Crawford's notes immediately following that same question state, "Traded pictures of 12 to 15-year-old images [sic] in chat rooms." Question #30 states, "Have you ever uploaded images depicting child pornography to the [I]nternet?" Immediately following that question, Agent Crawford's notes state, "Has posted some pics."

**2. *Phillips's Testimony***

Phillips admitted "receiving child pornography via the [I]nternet on [his] computer," but stated that he "had never uploaded and never traded" child pornography. When asked why the agents were under the impression that he had done so, he testified:

> A. [The agents] asked me if I had ever posted pictures using the IM messaging, instant messaging. I said yes and – of like over 18 posing as like teenage school girls and stuff. And I told them that on two or three different occasions . . . .
>
> Q. But those were adult?
>
> A. Yes.

Q.  Over 18?

A.  Right, from websites that dressed like school girls and et cetera.

* * *

A.  I said [to the agents that] the only thing that I uploaded was pictures of girls that were over 18 that were portrayed as teenagers, like school girls, like high school girls in cheerleading outfits and such . . . . I specifically mentioned – told them that the only thing I had ever traded on my part was adult women portrayed as high school girls in the ages of 12 to 15 or even 15 to 18, like high school.

### 3. *Madison-Hill's Testimony*

Madison-Hill, a licensed clinical social worker with training in the area of sexual offender treatment, testified that she had examined Phillips.  In her opinion, Phillips had been suffering from "overwhelming depression" at the time of his offense, and his offense may have been triggered by "significant stressors in his life, specifically his divorce and his breakup with his girlfriend."

### C.  The District Court's Decision

With respect to the distribution enhancement, the district judge concluded:

This is just a question . . . of which one – who do you believe here.  Do you believe . . . the defendant, who is saying that he did not upload any pictures [of children], or do you believe that perhaps he told the agents that because of statements in here that say Yahoo Groups to trade? . . . . So we have . . . the defendant's statement that he did upload pictures of older girls, women, whatever, who were dressed like younger ones. . . . And so, you know, the question is, well, did he or didn't he? . . . [T]here's no, you know, recording of this and the – the defendant did not obviously review these notes or agree or sign any statement. . . . [W]e really lack any hard evidence one way or the other, except we have a difference between what Agent Crawford really says flat out [in his notes] and what the defendant says.

The defendant has clearly admitted many things here, many behaviors that are abnormal in this entire matter but has indicated that he never uploaded images of young girls.  And then the question is, well, did he misunderstand the [agents'] question or is he lying or did the agent misunderstand his answer or is [the agent]

lying? I can't see that the agent would lie. I don't have [Agent Crawford's] testimony, but I have his notes here. I can't say that this agent that testified, Agent Sacasas, is untruthful. But we have basically a tossup here as to did he or didn't he without any proof. The question is what did he say?

On that basis, I'm going to sustain the objection because I think the government hasn't met its burden of proof by a preponderance to sustain the enhancement.

Phillips's lawyer then asked that, in light of the district court's ruling on the distribution enhancement, the court apply U.S.S.G. § 2G2.2(b)(1), which provides for a two-level reduction where "the defendant's conduct was limited to the receipt or solicitation of [child pornography]" and "the defendant did not intend to traffic in, or distribute, such material" (the "receipt-only reduction"). The district judge asked the government's counsel whether that provision "appl[ied] in light of [the court's] ruling" on the distribution enhancement, and the government acknowledged that it did. The district court therefore agreed to the two-level reduction.

With regard to the sadomasochism enhancement, Phillips's counsel argued that all child pornography is "sadomasochistic in and of [itself] inherently," and that therefore, "an enhancement for [sadomasochism] is basically redundancy [sic]." The district court overruled Phillips's objection, stating that "sadomasochistic" images are those depicting acts that "can be expected reasonably to cause pain or discomfort to . . . the child who is portrayed," and that not all child pornography necessarily qualifies as sadomasochistic under such a definition.

Applying the receipt-only reduction and the sadomasochism enhancement, and leaving out the distribution enhancement, the district court recalculated Phillips's adjusted offense level at 30. With a criminal history category of I, the resulting Guidelines range was 97-121 months' imprisonment. The district court concluded that Phillips presented "no ground to depart downward

under the guidelines in this case" and imposed a low-end Guidelines-range sentence of 97 months, followed by 20 years of supervised release. At the conclusion of the sentencing hearing, the district judge asked both Phillips and the government whether they had "[a]ny objections that ha[d] not previously been heard"; both answered in the negative. Both Phillips and the government timely cross-appealed the sentence.

## II. STANDARD OF REVIEW

Generally, we review a sentence for reasonableness, both procedural and substantive. *United States v. Thompson*, 586 F.3d 1035, 1037 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38 (2007)). A sentence is procedurally unreasonable where, inter alia, the district court "improperly calculat[ed] . . . the Guidelines range . . . [or] select[ed the] sentence based on clearly erroneous facts . . . ." *Gall*, 522 U.S. at 51. A factual finding is clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Deitz*, 577 F.3d 672, 698 (6th Cir. 2009).

## III. DISCUSSION

### A. Refusal To Apply the Distribution Enhancement

The government argues that "[t]he district court committed procedural error . . . when, despite finding the agents credible, it refused to apply the [distribution enhancement]." Appellant Br. at 7. Specifically, the government notes that the district court stated, "I can't say that . . . Agent Sacasas . . . is untruthful"; that the district court stated, "I can't see that [Agent Crawford] would lie"; and that the district court made no statements on the record as to Phillips's credibility. In the government's view, these credibility determinations compel the ultimate conclusion that Phillips did,

in fact, trade child pornography on the Internet. Under these circumstances, the government argues, the district court's conclusion that the distribution question was a "tossup" was clearly erroneous.

However, the government's logical progression is flawed. Even if the agents were not *lying* about what they said or what they heard, it does not necessarily follow that Phillips correctly understood their question or that the agents correctly understood Phillips's response. In fact, the district court expressly noted the possibility that Phillips "misunderst[ood] the [agents'] question" as to distribution or that "the agent[s] misunderst[ood] his answer." From the transcript of the sentencing hearing, it can clearly be inferred that, in the district court's opinion, it was as likely as not that a misunderstanding had occurred. Although Phillips's explanation that he was referring to pictures of *adult* women *dressed as* underage schoolgirls may strike us as contrived, the record as a whole does not support a "definite and firm conviction" that the district court's fact-finding was in error. *Deitz*, 577 F.3d at 698.[1]

## B. Application of the Receipt-Only Reduction

In addition to arguing that the district court erred by refusing to apply the distribution enhancement, the government argues that the district court erred by "decreas[ing] the offense level

---

[1] At oral argument, the government objected to the district court's comment on the absence of "hard evidence," such as a tape recording of the interview. In particular, the government claimed that this remark shows that the district court erroneously held the government to a burden of proof higher than a preponderance of the evidence by requiring physical evidence of the "smoking gun" variety. Although this argument was not asserted in the government's opening brief and is therefore waived, *see United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008), we find it without merit in any event. The district court correctly noted that the government's burden was to prove distribution "by a preponderance" and did not state or imply that the lack of "hard evidence" was in itself dispositive of the distribution question.

two levels on the [ground] that Phillips's offense was limited to receipt of child pornography." Appellant Br. at 2. However, the government's argument as to the receipt-only reduction is entirely subsumed within its argument as to the distribution enhancement. In other words, the government's argument *both* with respect to the receipt-only reduction *and* with respect to the distribution enhancement is premised on the claim that the district court clearly erred by finding "a tossup" notwithstanding the agents' credible testimony. As discussed above, this argument is unpersuasive.

## C. Application of the Sadomasochism Enhancement

Under the Guidelines, "impermissible 'double counting' occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways." *United States v. Moon*, 513 F.3d 527, 542 (6th Cir. 2008). In particular, we have found inappropriate "the cumulative use of the same conduct to both establish a base offense level and apply an enhancement." *United States v. Farrow*, 198 F.3d 179, 191 (6th Cir. 1999).

Phillips does not contest that the images he received and possessed included images that qualify as sadomasochistic. Rather, he argues that "[c]hild pornography inherently victimizes the child [portrayed therein] through sexual dominance and control," and that the district court therefore "misapplied the law . . . when it overruled [his] objection that U.S.S.G. § 2G2.2(b)(4) [i.e., the sadomasochism enhancement] enhances a base sentence which intrinsically already contains the U.S.S.G. § 2G2.2(b)(4) considerations."

Because the Guidelines do not define "sadistic or masochistic conduct," we have turned to the dictionary in holding that such conduct is of the type likely to involve the "infliction of pain."

*United States v. Groenendal*, 557 F.3d 419, 425 (6th Cir. 2009) (quoting *United States v. Lyckman*, 235 F.3d 234, 238 n.19 (5th Cir. 2000)); *see also United States v. Quinn*, 257 F. App'x 864, 866-67 (6th Cir. 2007); *United States v. Fuller*, 77 F. App'x 371, 383-84 (6th Cir. 2003). The base offenses at issue here – receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) and possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) – need not involve the depiction of acts likely to cause pain. Those base offenses require receiving or possessing depictions of minors "engaging in sexually explicit conduct," which is defined to include not just hard-core sexual acts, but also, inter alia, "lascivious exhibition of the genitals or pubic area." 18 U.S.C. § 2256 (2)(A). It is clear that, at least under some circumstances, lascivious nude posing, without more, would not inflict sufficient pain on a minor to trigger the sadomasochism enhancement. *Cf. United States v. Borho*, 485 F.3d 904, 909-10 (6th Cir. 2007) (stating that "not all child pornography is equally sadistic" and distinguishing an image of sex between two minors and "a video clip depicting an adult male anally raping a toddler").

Accordingly, we hold that Phillips's double-counting argument is without merit. In doing so, we join every other circuit to consider this argument. *See United States v. Rearden*, 349 F.3d 608, 616 (9th Cir. 2003) (rejecting argument that the sadomasochism enhancement "is already covered by the base offense level for shipping material involving the sexual exploitation of a minor" because "the base offense . . . could, for example, involve pictures of a naked child without physical

sexual contact"); *Lyckman*, 235 F.3d at 240 (same); *United States v. Myers*, 355 F.3d 1040, 1044 (7th Cir. 2004) (same); *United States v. Hall*, 312 F.3d 1250, 1263 n.17 (11th Cir. 2002) (same).[2]

## D. Failure To Depart Downward on Account of Phillips's Depression

Finally, Phillips asserts that the undisputed testimony of Madison-Hill established that "Phillips suffered from major depression" and that the depression "triggered 'the decision to offend.'" Appellee/Cross-Appellant Br. at 36. Accordingly, he argues, "the [d]istrict [c]ourt committed clear error when it failed to grant a downward . . . departure" under U.S.S.G. § 5K2.13.

This argument is patently without merit. Under § 5K2.13, "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." The Guidelines specifically state, however, that this ground for departure is not applicable where, inter alia, "the defendant has been convicted of an offense under chapter . . . 110 . . . of title 18, United States Code" (i.e., "Sexual Exploitation and Other Abuse of Children"). The provisions Phillips was convicted of violating – 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B) – fall under that chapter. Accordingly, a downward departure pursuant to U.S.S.G. § 5K2.13 was not available in this case.

---

[2] We note that this circuit has never explicitly limited "sadistic or masochistic conduct" to conduct likely to cause *physical* pain; indeed, other circuits have construed the phrase broadly enough to encompass conduct likely to cause extreme psychological or emotional distress. *See, e.g.*, *Lyckman*, 235 F.3d at 239; *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999). We need not decide whether to recognize such a broad definition of "sadistic or masochistic conduct" in order to dispose of Phillips's double-counting argument, however, because even under the broadest definition, taking photographs of a minor merely posing nude would not qualify.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.