NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0617n.06

No. 12-3875

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 01, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee.** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| DEONTE SULLINS, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |

BEFORE: NORRIS, COOK, and McKEAGUE, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Defendant Deonte Sullins pleaded guilty to participating in a four-person conspiracy organized primarily to steal motorcycles. Defendant appeals certain sentencing decisions made by the district court. Specifically, he argues that the court should not have imposed an order of restitution for $173,400—the loss caused by the entire conspiracy—because he did not participate in each theft. He also contends that he should have received a reduction to his offense level because he played a minor role in the conspiracy and that the court erred in determining the amount of loss and number of victims for sentencing purposes. Finding no error, we affirm the judgment of the district court.

**I.**

Defendant was charged in an eight-count indictment with conspiracy to "possess a counterfeit security of an organization, with the intent to deceive another person" in violation of 18 U.S.C.

§ 371.  The remaining substantive counts charged defendants with passing counterfeit checks in violation of 18 U.S.C. §§ 513 & 2.  Without the benefit of a plea agreement, defendant pleaded guilty to the conspiracy count and to one substantive count.

The conspiracy began in March 2009 and continued through April 2010.  During that period, the conspirators would monitor Craigslist for motorcycles listed for sale by private owners.  During the conspiracy, defendant Sullins purchased a cashier's check for $5.00 from US Bank, which was used to create fraudulent checks in a different amount, which were then offered as payment for some of the motorcycles.  In all, twenty-one motorcycles, three cars, and one turntable were purchased in this manner.

The district court imposed a sentence of twenty-one months of incarceration followed by three years of supervised release.  While it did not impose a fine due to inability to pay, it ordered restitution in the amount of $173,400.00.

**II.**

We now turn to the sentencing challenges raised by defendant.

*1.  The Order of Restitution*

This court reviews de novo whether a restitution order is permitted under law.  *United States v. Batti*, 631 F.3d 371, 379 (6th Cir. 2011).  If it is, the amount of restitution ordered by the district court is reviewed for an abuse of discretion.  *Id.*   In the instant case, defendant does not challenge the propriety of restitution, only the amount.  Hence, we review for an abuse of discretion.

At the sentencing hearing, counsel objected to the court holding her client responsible for the entire amount of loss generated by the conspiracy rather than for the two acts he actually participated

in: one that occurred on March 25, 2009 and another on September 12, 2009. The loss incurred as a result of those crimes was $10,400. In counsel's view, this amount should be the extent of restitution. The court responded to this argument as follows:

> [I]n my view, each of the co-defendants is joint and severally liable for their conduct. That's why he's charged in the conspiracy with the full dollar amount, and I'm making it joint and several. Whether or not any of this is going to be repaid, I don't know.

According to defendant, missing from the district court's analysis is any meaningful discussion of relative culpability. This court has noted that relative culpability may be a factor when ordering restitution. *United States v. Anglian*, 784 F.2d 765, 768 (6th Cir. 1986).

However, the district court made the following assessment of relative culpability at sentencing, albeit in the context of a "role in the offense" reduction rather than restitution:

> So I don't believe the defendant has met his burden of proving a role in the offense reduction. He's certainly less culpable than Butler and Milton, they got role in the offense enhancements, but I don't believe the defendant has . . . proven by a preponderance of the evidence that his involvement was substantially less than Mr. Hannett and, therefore, no role in the offense reduction applies.

In short, the district court recognized that two of the four co-conspirators were more culpable than defendant.

We note that *Anglian* dealt with restitution under the Victim and Witness Protection Act of 1982, not the restitution statute at issue here, the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. The MVRA includes the following provision: "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the

defendant." 18 U.S.C. § 3664(f)(1)(A). In this case, the amount of loss suffered by each victim was quite specific: the amount of the fraudulent checks presented for payment. However, a different subsection of § 3664 includes a provision directed at restitution orders involving multiple defendants: "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). Thus, while the district court could have considered defendant's ability to pay, it was not required to do so.

At sentencing, defendant explained his circumstances: that he has two children and cared for a third, that he survived on worker's compensation due to a back injury, and that he wanted to be a good father. In addition, the presentence report ("PSR") outlined defendant's circumstances and the district court was clearly aware of them because it declined to impose a fine based on inability to pay.

As noted at the outset, our review is for an abuse of discretion. The sentencing transcript reveals that the district court considered Mr. Sullins *in toto*. It gave him credit for being a good father, for instance, and recognized that he was not the leader of the conspiracy. However, it also found that defendant never withdrew from that conspiracy and that all of the crimes committed in furtherance of the conspiracy were foreseeable and therefore attributable to defendant.

The amount of restitution awarded is undoubtedly high, particularly for a defendant with the limited earning potential and financial obligations of Mr. Sullins. That said, the order is joint and severable and defendant is a relatively young man. While the district court could have given greater

weight to defendant's financial circumstances under 18 U.S.C. § 3664(h), it elected not to do so. We find no abuse of discretion in the order.

Defendant raises one final point with respect to restitution for the first time on appeal. The Cuyahoga County Court of Common Pleas imposed restitution orders in state prosecutions that stemmed from the same offenses. The PSR noted that two of the offenses were "related to the instant federal offense." They involved victims Donald Clark and Gary Farkosh. The Court of Common Pleas ordered restitution to them respectively. Defendant contends on appeal that those awards represent double-counting and should be deducted from his federal order of restitution. However, counsel did not raise the issue of double recovery at the federal sentence hearing. Generally, a failure to object to an error at sentencing forfeits any challenge to sentencing on appeal. *United States v. Kincaide*, 145 F.3d 771, 784 (6th Cir. 1998). We may, however, find plain error when reviewing an issue raised for the first time on appeal if the error is clear or obvious, and it affects substantial rights. *See, e.g., United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996). Under plain error review, the party claiming error must show "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). In this instance, we find that the failure to offset defendant's state-court restitution orders falls short of plain error. *See Puckett v. United States,* 556 U.S. 129, 135 (2009) (noting that meeting the four prongs of plain error review is "difficult, as it should be").

## 2. Base Offense Level

Defendant contends that the district court miscalculated his base offense level in two respects: by adding ten levels based upon a finding that the amount of loss was between $120,000 and $200,000, U.S.S.G. § 2B1.1(b)(1)(F), and by increasing the base offense level by two because the crime involved ten or more victims, U.S.S.G. § 2B1.1(b)(2)(A).

The reasonableness of a sentence has a procedural and a substantive component that we review under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

### a. Amount of Loss Used in Calculating Base Offense Level

At the sentencing hearing, much as she did with the order of restitution, defense counsel argued that "even though my client was certainly a conspirator and participated in the conspiracy. . . he should not be held accountable for the entire amount." The district court disagreed: "The law says he was responsible for the full extent of the conspiracy if it's reasonably foreseeable. The facts clearly show Mr. Sullins knew there were other people, there were other vehicles."

On appeal, defendant urges us to reconsider. According to the sentencing guidelines, when jointly undertaken criminal activity is at issue, the appropriate adjustment for an individual defendant must consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002) (holding that the guideline "requires that the district court make *particularized* findings with respect to both the scope of the defendant's agreement *and* the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy") (emphasis original). In defendant's view, the district court's statement that defendant knew of other

vehicles and people is insufficiently particularized to support its conclusion that he is liable for the entire amount of the conspiracy.

Defendant observes that the Application Notes to U.S.S.G. § 1B1.3 include this guidance: "Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the 'jointly undertaken criminal activity') is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3, comment. (n.2) (Nov. 2011). In defendant's view, this consideration resonates all the more because the PSR itself only listed him as participating in two of the twenty-four substantive acts.

### b. Number of Victims for Sentencing Purposes

Defendant asserts the same argument for the two-level enhancement he received for the number of victims that he did for amount of loss: the entire conspiracy and its victims, which he concedes exceeded ten, cannot be attributed to him. He notes that the guideline at issue, U.S.S.G. § 2B1.1., defines victim as any person who sustains an actual loss that is reasonably foreseeable. The district court attributed the number of victims based upon the fact that defendant was responsible for the entire conspiracy.

While it would have been preferable had the district court explained its rationale at greater length, we believe that the record is sufficient to support its conclusion and that remand is not required. A decision of this court provides us guidance. *United States v. Elias*, 107 F. App'x 634 (6th Cir. 2004). In *Elias*, the defendant was a member of a check cashing operation. *Id.* at 635. He and several others cashed counterfeit checks at various banks. *Id.* He pleaded guilty to bank fraud, and at

sentencing the district court used the total amount of counterfeit checks cashed by Elias and his co-conspirators at the same time to determine the amount of loss. *Id.* Elias argued that he should only have been held responsible for the checks that he personally cashed. *Id.* In rejecting Elias's argument, we concluded that the district court substantially complied with the requirements set forth in *Campbell*. *Id.* at 638. Among other things, the PSR supported the district court's conclusion and Elias had failed to object to the PRS's description of the offense conduct contained in that report. *Id.*

This case bears several similarities to *Elias*. First, there is nothing in the record that would support finding a limited scope to defendant's agreement. Instead, the record indicates that he was a member of a gang that was stealing motorcycles. He was directly involved in stealing the first and fourth motorcycles that the gang stole—in March and September 2009. The government agent who testified at the sentencing hearing said that defendant was involved in the conspiracy "almost to the very end, you know, from 2009 up until 2010. Defendant could have introduced evidence indicating a limited scope to his agreement—the district court continued the sentencing hearing specifically to allow testimony as to defendant's role in the conspiracy—but he chose not to present any testimony. Only the government agent testified at the continued hearing.

Second, defendant did not object to the offense conduct description in the PSR. While the PSR does not explicitly state the scope of defendant's agreement, it does describe the conspiracy and his involvement in it.

Third, the district court "substantially complied" with the *Campbell* requirements. As in *Elias*, remanding so that the district court could use the words "scope of the agreement" would be a waste of resources. If defendant wanted to plead guilty to conspiracy and then be held responsible for only

some of the acts of his co-conspirators, he should have given the district court reason to find that the scope of his agreement was limited in some way. He did not do so.

For the foregoing reasons, we affirm the district court's decision with respect to the amount of loss and number of victims.

### 3. Role in the Offense

Defendant sought a downward adjustment to his offense level as a minor participant. U.S.S.G. § 3B1.2(b) ("If the defendant was a minor participant in any criminal activity, decrease by 2 levels."). A "minor participant" is someone who "is less culpable than most of the other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 comment. (n.5). While sentencing decisions are generally reviewed under the advisory guidelines for an abuse of discretion, *Gall*, 552 U.S. at 51, a district court's decision regarding the minor participant reduction is given significant deference. *United States v. Gabbard*, 586 F.3d 1046, 1052 (6th Cir. 2009).

The PSR made the following recommendation:

> No adjustments for role in the offense apply in this case. Based on the information provided to this officer and received from ATF Agent Honaker, it appears that the defendant was just as culpable as codefendants George Hannett and Darnell Milton in acquiring the motorcycles, and that codefendant Vincent Butler was the organizer/leader.

As mentioned earlier, the district court concluded that defendant was "less culpable" than two of his co-conspirators and as culpable as the fourth. For that reason it denied the adjustment.

In light of the deferential standard of review, we affirm the district court. Defendant's involvement was critical to the success of the conspiracy. In *United States v. Miller*, 56 F.3d 719 (6th

Cir. 1995), we affirmed the denial of a "minor participant" reduction even though the defendant played a limited role in a chop-shop operation based on this reasoning:

> Although defendant did not plan the chop shop operation, his role of taking the trucks apart was necessary to its success. A defendant does not become a minor participant simply because others planned a scheme and made all the arrangements for its accomplishment.

*Id.* at 720. As described earlier, defendant took part in the conspiracy at various times nearly throughout its existence. In short, the district court had sufficient evidence before it to deny defendant a reduction based upon his role in the offense.

**III.**

The judgment is **affirmed**.