RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-3097

MICHAEL S. WALTERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:13-cr-00071-1—Christopher A. Boyko, District Judge.

Argued: November 19, 2014

Decided and Filed: January 2, 2015

Before: MERRITT, WHITE, and DONALD, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Lawrence L. Delino, Jr, Akron, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Lawrence L. Delino, Jr, Akron, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

DONALD, J., delivered the opinion of the court in which WHITE, J., joined. WHITE, J. (pg. 14), delivered a separate concurring opinion. MERRITT, J. (pp. 15–17), delivered a separate dissenting opinion.

---

**OPINION**

---

BERNICE BOUIE DONALD, Circuit Judge.  Defendant-Appellant Michael S. Walters ("Walters") appeals his sentence for possessing, receiving, and distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) ("Count 1") and 2252A(a)(5)(B) ("Count 2").  Walters pleaded guilty to both counts in October 2013 without a plea agreement.  In January 2014, the district court sentenced him to 151 months' imprisonment on Count 1 and 120 months' imprisonment on Count 2, to be served concurrently.

On appeal, Walters challenges three enhancements the district court applied to his sentence: 1) a two-point enhancement for "distribution" pursuant to U.S.S.G. § 2G2.2(b)(3)(F); 2) a four-point enhancement for engaging in the receipt and distribution of materials depicting sadism, masochism, or other violence pursuant to U.S.S.G. § 2G2.2(b)(4); and 3) a two-point enhancement for "use of a computer" in distributing child pornography pursuant to U.S.S.G. § 2G2.2(b)(6).  Walters argues that these enhancements constitute impermissible double counting in violation of his right to due process and freedom from double jeopardy under the Fifth and Fourteenth Amendments.  For the reasons that follow, we AFFIRM the district court's decision.

## I.  BACKGROUND

This case involves the exchange of child pornography online via peer-to-peer software. In 2012, federal agents acting under the auspices of the Ohio Internet Crimes Against Children Task Force located a computer downloading several videos depicting real children engaged in sexually explicit conduct.  Between April and November 2012, the computer was used repeatedly to connect with peer-to-peer software that enabled the user to access other computers and vice versa.  Through this software, the user searched for and downloaded several hundred videos of child pornography.  These materials were saved in a shared drive on the computer to allow other users to access them.

On January 9, 2013, the agents executed a search warrant on Walters' neighbors' house based on the billing address from the computer's internet service provider. During questioning, the neighbor stated that he had no knowledge of the child pornography, but revealed that he had shared his wireless internet password with Walters.

The agents subsequently questioned Walters at his home. Walters consented to a search of his computer, telling the agents that if there was anything on the computer, they could erase it and it would not happen again. While on site, the agents recovered multiple pornographic videos of children from the computer and confronted Walters with this discovery. Walters admitted to having downloaded certain pornographic images through the peer-to-peer network over a period of time. He also admitted he knew others could obtain child pornography from him through the network.

Walters estimated that, over the course of the previous year, he had viewed 500 pornographic videos primarily depicting female minors between the ages of five and fourteen having oral sex, vaginal sex, and anal sex with an adult male. Among the files on Walters' computer when agents interviewed him at his home were videos of an adult male engaged in genital-to-genital intercourse with a prepubescent female, a video of a male subject engaged in genital-to-genital intercourse with a female toddler, and a video of an adult male engaged in anal intercourse with a prepubescent male. The probation officer who drafted Walters' sentencing recommendation observed that he appeared to be attracted to father-daughter pornography in particular. Walters stated that, although he had never sexually touched his then-nine-year-old daughter, he had entertained sexual thoughts about her.

Walters was indicted on two counts: 1) that he "did knowingly receive and distribute" child pornography, by any means, including by computer, in violation of 18 U.S.C. § 2252(a)(2) (Count 1); and 2) that he did knowingly possess a computer containing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2). Walters pleaded guilty to both counts in October 2013. There was no plea agreement.

At sentencing, Walters objected to three of the point enhancements recommended in the Presentencing Report ("PSR"), all of which he claimed constituted impermissible double counting: 1) a two-level enhancement for "distribution"; 2) a four-level enhancement for

"sadistic, masochistic or other violent images"; and 3) a two-level enhancement for "use of a computer" in commission of the crime. The court overruled his objections, and applied all three enhancements to his base offense level of 22. Combined with other enhancements and deductions, Walters was assigned a total offense level of 34 and a criminal history category of I. Based on the statute and the Sentencing Guidelines, Walters had a sentencing range of 151 to 188 months' imprisonment for Count 1 and a maximum of 120 months' imprisonment on Count 2. The court sentenced Walters to 151 months and 120 months on Counts 1 and 2, respectively, and mandated that they be served concurrently. Walters now appeals.

## II.    ANALYSIS

### A.    Standard of Review

"We review sentences under a deferential abuse-of-discretion standard." *United States v. Howard*, 570 F. App'x 478, 480 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). To determine whether a district court abused its discretion, we look to whether the sentence is reasonable. *Id.* (citing *Gall*, 552 U.S. at 46). Sentences must be both procedurally and substantively reasonable. *United States v. Sullins*, 529 F. App'x 584, 588 (6th Cir. 2013) (citing *Gall*, 552 U.S. at 51).

When considering a sentence determined under the federal Sentencing Guidelines, we review a district court's factual findings for clear error; we then review de novo the court's interpretation and application of the Guidelines. *Howard*, 570 F. App'x at 480 (citing *United States v. Benson*, 591 F.3d 491, 504 (6th Cir. 2010)). In this context, a sentence is procedurally unreasonable if, for example, the court "improperly calculat[es] the Sentencing Guidelines range, consider[s] the Sentencing Guidelines mandatory, ignor[es] the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." *Id.* (citing *Gall*, 552 U.S. at 51). Whether the district court properly applied a sentence enhancement under the Guidelines is also a matter of procedural reasonableness. *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (citing *United States v. Flack*, 392 F. App'x 467, 470 (6th Cir. 2010)). Walters does not challenge the substantive reasonableness of his sentence.

Accordingly, we review de novo the district court's application of enhancements to Walters' sentence under the Guidelines.

**B.      Procedural Reasonableness**

<u>1.      Constitutionality of Double Counting</u>

Walters asserts that the challenged sentence enhancements constitute unconstitutional double counting.  By penalizing him twice for the same conduct, he argues, the sentence imposed by the district court violates his right to due process and his right not to be subject to double jeopardy.  U.S. CONST. amends. V and XIV, § 1.  Walters' constitutional argument is unpersuasive.  It is well-established in this Circuit that double counting—even impermissible double counting—does not rise to the level of a constitutional violation.

Double counting "occurs when 'precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways.'"  *United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003) (quoting *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999)).  "[N]o double counting occurs if the defendant is punished for distinct aspects of his conduct."  *Battaglia*, 624 F.3d at 351 (citing *United States v. Moon*, 513 F.3d 527, 542 (6th Cir. 2008)).  Where double counting does occur, however, it may be permissible.  *Id*.  Where it "appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct," double counting is permitted.  *Id*. (quoting *Farrow*, 198 F.3d at 194).  Indeed, the Guidelines explicitly state that "[t]he offense level adjustments from more than one specific offense guideline are applied cumulatively (added together) unless otherwise noted."  U.S.S.G. § 1B1.1 cmt. n. 4(A).

It is settled law in this Circuit that double counting does not violate the Constitution's prohibition on double jeopardy.  *Wheeler*, 330 F.3d at 413 ("In asserting a double jeopardy violation, Defendant unsuccessfully attempts to transform what constitutes at most a double counting issue under the sentencing guidelines into a constitutional concern.").  In *Wheeler*, we concluded that

> [a]lthough the Constitution prohibits multiple criminal punishments for the same offense, double jeopardy principles generally have no application in the sentencing context "because the determinations at issue do not place a defendant

in jeopardy for an 'offense.'" This rule also applies to sentencing enhancements, which constitute increased penalties for the latest crime, rather than "'a new jeopardy or additional penalty for the earlier crimes.'"

*Id.* (quoting *Monge v. California*, 524 U.S. 721, 728 (1998)). Thus, when a district court applies multiple sections of the Guidelines to determine the proper sentence for an offense, there is no constitutional violation for double jeopardy. *Id.*

Walters also argues that the alleged double counting in this case violates his right to due process. However, he fails to articulate a connection between double counting and a violation of due process. He argues the sentence is "unfair," but then repeatedly engages in an analysis of whether the sentence enhancements constitute impermissible double counting—a separate inquiry with different implications. Even though the government directly challenges him on this point, Walters again asserts only that the sentence is "unfair," and requests a downward adjustment. As Walters presents no legal argument for this Court to evaluate with regards to his due process claim, it is unnecessary to consider it further. Fed. R. App. P. 28(a)(8) (requiring appellant to set forth both his contentions on appeal and arguments supporting them).

Properly construed, Walters' appeal largely contends that the challenged sentence enhancements are impermissible double counting. The relief requested—that the enhancements be removed and the case remanded for re-sentencing—would be properly granted if he demonstrates that the enhancements are impermissible. We therefore evaluate whether that is the case.

### 2.     Permissibility of Double Counting

As discussed, Walters pleaded guilty to two counts of possession, receipt, and distribution of child pornography under 18 U.S.C. §§ 2252(a)(2) and 2252A(a)(5)(B). Walters argues that each of the three sentence enhancements applied by the district court was already an element of his crime. However, an examination of the language in Walters' Indictment, the relevant statutes, and the Sentencing Guidelines reveals that each enhancement was properly applied under our existing jurisprudence regarding double counting.

a.      Distribution

Walters first challenges a two-point sentence enhancement imposed by the district court for "distribution" under the Sentencing Guidelines.  His claim fails because the enhancement does not constitute double counting.

Walters pleaded guilty to Count 1 of his Indictment, which stated that he "did knowingly receive and distribute . . . numerous computer files, which files contained visual depictions of real minors engaged in sexually explicit conduct . . . in violation of [18 U.S.C. § 2252(a)(2)]." The statutory language supporting Count 1 states that "[a]ny person who [] knowingly receives, or distributes, any visual depiction . . . if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct; shall be punished[.]"  18 U.S.C. § 2252(a)(2).

Section 2G2.2 of the Sentencing Guidelines addresses "Trafficking in Material Involving the Sexual Exploitation of a Minor."  This section establishes a base offense level of 22 for a defendant convicted under 18 U.S.C. § 2252(a)(2) (Count 1 of Walters' Indictment).  It then goes on to provide for various sentence enhancements based on particular characteristics of the offense, stating that

> [i]f the offense involved:
>
> (A) Distribution for pecuniary gain, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the retail value of the material, but by not less than 5 levels.
>
> (B) Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, increase by 5 levels.
>
> (C) Distribution to a minor, increase by 5 levels.
>
> (D) Distribution to a minor that was intended to persuade, induce, entice, or coerce the minor to engage in any illegal activity, other than illegal activity covered under subdivision (E), increase by 6 levels.
>
> (E) Distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, increase by 7 levels.
>
> **(F) Distribution other than distribution described in subdivisions (A) through (E), increase by 2 levels.**

U.S.S.G. § 2G2.2(b)(3) (emphasis added).

The officer preparing Walters' PSR recommended a two-level enhancement based on subsection (F), highlighted above. The district court accepted the recommendation and applied the enhancement.

At sentencing and on appeal, Walters argues that subsection (F) duplicates the "distribution" element of his conviction under § 2252(a)(2) and therefore constitutes impermissible double counting. He notes that subsections (A) through (E) articulate actions that *aggravate* a typical case of distribution. Subsections (A) and (B) draw a distinction between distribution alone and distribution *for the purposes of a quid pro quo*; subsections (C), (D), and (E) apply increases for distribution *to a minor*. By contrast, Walters argues, subsection (F) adds a two level enhancement "solely for committing the act." He claims this unjustly punishes him twice for the same conduct: once as an element of the offense, and again as an enhancement to the offense.

Walters' analysis is flawed. The sentence enhancement for distribution is not double counting in this instance. Recall that, where a defendant is penalized for distinct aspects of his conduct, no double counting takes place. *United States v. Kizer*, 517 F. App'x 415, 419 (6th Cir. 2013) (citing *Moon*, 513 F.3d at 542 (6th Cir. 2008)). The statute states that a defendant may be convicted for "receipt[] *or* distribution"; it does not require both. 18 U.S.C. § 2252(a)(2) (emphasis added). The Sentencing Guidelines similarly differentiate between receipt and distribution, noting that distribution aggravates an offense under § 2252(a)(2) because it is more than the "mere solicitation" of pornographic material by a defendant. U.S.S.G. § 2G2.2, cmt. n. 1. The distribution enhancement is therefore distinct from sentencing for mere receipt under the statute.

We recently affirmed this approach in *United States v. Clark*, 553 F. App'x 538, 539 (6th Cir. 2014) (per curiam). Like Walters, Clark pleaded guilty to distribution under § 2252(a)(2) and the district court applied a two-point enhancement to his sentence under § 2G2.2(b)(3)(F). *Id*. On appeal, Clark argued the enhancement was "improper double counting because the fact that he had distributed child pornography was taken into account by his conviction under § 2252A(a)(2)[.]" *Id*. We disagreed: "[d]espite Clark's argument to the contrary, the district

court's application of the enhancement under § 2G2.2(b)(3)(F) did not result in improper double counting." *Id*. (referencing *United States v. Reingold*, 731 F.3d 204, 227-28 (2d Cir. 2013) ("Section 2252(a)(2) proscribes the knowing receipt *or* distribution of child pornography. . . . the Guideline provides for an enhancement to the base offense level for offenses that involved the distribution of child pornography. Specifically, [§ 2G2.2(b)(3)(F)] dictates a two-level enhancement whenever an offense involved distribution[.] . . . This structure cannot be understood to address the harm associated with the distribution of child pornography in a base offense level of 22 that applies equally to a variety of offenses, some involving distribution and others not. Rather, § 2G2.2 is structured so that the range of harms associated with distribution can be addressed through various enhancements." (internal quotation marks and citations omitted))).

Further, the district court clarified when it sentenced Walters that it applied subsection (F) not just for distribution, but for distribution through a peer-to-peer network. (R.42, Page ID #183) ("As to the first objection to the addition of two points for distribution, it is true that pier-to-pier [sic] and searching, and searching and sharing files, is distribution, that's well settled, and of course Mr. Walters had knowledge of how it works.")) We have repeatedly found that subsection (F) is appropriately applied in cases where a defendant distributed child pornography through use of peer-to-peer software. *See, e.g., Clark*, 553 F. App'x at 539; *United States v. Gerick*, 568 F. App'x 405, 412 (6th Cir. 2014) ("Knowing use of a file-sharing program is sufficient to warrant the two-point increase under U.S.S.G. § 2G2.2(b)(3)(F)." (citing *United States v. Conner*, 521 F. App'x 493, 499-500 (6th Cir. 2013))); *United States v. Darway*, 255 F. App'x 68, 72 (6th Cir. 2007). Contrary to Walters' characterization, the district court applied subsection (F) for distribution that is aggravated in ways not discussed in (A) through (E): distribution aggravated through use of peer-to-peer software. The enhancement of Walters' sentence under § 2G2.2(a)(2) was not double counting. Accordingly, the district court did not abuse its discretion in applying the enhancement.

> b. Sadistic or Masochistic Material

Walters next appeals the district court's application of a four-point enhancement for exchanging material that is sadistic, masochistic, or otherwise violent. He argues that this

enhancement also constitutes impermissible double counting and must be removed from his sentence. This argument also fails.

The Sentencing Guidelines for crimes under 18 U.S.C. §§ 2252(a)(2) and 2252A(a)(5) state that if the particular offense "involved material that portrays sadistic or masochistic conduct or other depictions of violence," the court should enhance the defendant's sentencing level by four points. U.S.S.G. § 2G2.2(b)(4). Walters contends that "every image involving children in any sexual context or for that purpose is, at the very least, an image of violence," and that any act to which U.S.S.G. § 2G2.2(b)(4) might apply is always "an act that satisfies the violence enhancement therein." Thus, he reasons, the enhancement serves only to punish an offender twice for the same conduct.

However, we have held that the enhancement under § 2G2.2(b)(4) does *not* apply to all child pornography convictions. *United States v. Phillips*, 383 F. App'x 527, 532-33 (6th Cir. 2010). In *Phillips*, the defendant was similarly convicted under § 2252(a)(2) and the district court applied the same four-level enhancement for sadistic and masochistic material at issue here. *Id.* at 528. On appeal, Phillips argued that "'[c]hild pornography inherently victimizes the child [portrayed therein] through sexual dominance and control,' and that the district court therefore 'misapplied the law . . . when it overruled [his] objection that U.S.S.G. § 2G2.2(b)(4) . . . enhances a base sentence which intrinsically already contains the U.S.S.G. § 2G2.2(b)(4) considerations.'" *Id.* at 532 (alterations in original) (quoting the appellant's brief). We rejected Phillips' interpretation, noting that "sadistic or masochistic conduct" typically involves an additional element: "the infliction of pain." *Id.* at 532 (citing *United States v. Groenendal*, 557 F.3d 419, 425 (6th Cir. 2009); *United States v. Quinn*, 257 F. App'x 864, 866-67 (6th Cir. 2007); *United States v. Fuller*, 77 F. App'x 371, 383-84 (6th Cir. 2003)). We explained that

> [t]he base offense[] at issue here-receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) and possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B)-need not involve the depiction of acts likely to cause pain. Those base offenses require receiving or possessing depictions of minors "engaging in sexually explicit conduct," which is defined to include not just hard-core sexual acts, but also, inter alia, "lascivious exhibition of the genitals or pubic area." It is clear that, at least under some circumstances, lascivious nude posing, without more, would not inflict sufficient pain on a minor to trigger the sadomasochism enhancement.

*Id.* at 532-33 (citing *United States v. Borho*, 485 F.3d 904, 909-10 (6th Cir. 2007) (stating that "not all child pornography is equally sadistic" and distinguishing an image of sex between two minors and "a video clip depicting an adult male anally raping a toddler")). We held that the enhancement was not double counting.[1] *Id.* at 533.

On appeal, Walters makes the same argument as Phillips, and his argument fails for the same reasons. Among the pornographic materials discovered on his computer at the time of his arrest were several videos of adult males raping prepubescent boys and girls, including a video of a male subject having genital-to-genital intercourse with a female toddler. These videos are clearly distinguishable from materials involved in other child pornography cases. The four-level enhancement under § 2G2.2(b)(4) does not "double count" any aspect of Walters' crime. Rather, it separately punishes him for exchanging and possessing the sadistic, masochistic material it is explicitly designed to address. The district court acted within its discretion to apply the enhancement.

### c.      Use of a Computer

Finally, Walters challenges the district court's application of a two-level sentence enhancement for "use of a computer or an interactive computer service" in commission of his crime. U.S.S.G. § 2G2.2(b)(6). This claim fails on multiple bases.

As with his other objections, Walters asserts that application of an enhancement for use of a computer under § 2G2.2(b)(6) constitutes impermissible double counting. He does not explain why or how this might be; instead, he attacks the rationale behind the enhancement itself. In particular, Walters claims that frequent application of the enhancement "blurs the logical difference between the least and worst offenders." He argues that there is "no reason to believe that computer images are any more permanent than those in print," and that, although the enhancement is applied often, a "computer does not aggravate the offense" in every case.

---

[1]Our interpretation regarding the enhancement for sadistic or masochistic materials is widespread. "In [rejecting Phillips' claim as meritless], we join[ed] every other circuit to consider this argument." *Id.* at 533 (citing *United States v. Rearden*, 349 F.3d 608, 616 (9th Cir. 2003) (rejecting the argument that the sadomasochism enhancement "is already covered by the base offense level" because "the base offense . . . could, for example, involve pictures of a naked child without physical sexual contact"); *United States v. Lyckman*, 235 F.3d 234, 240 (5th Cir. 2000) (same); *United States v. Myers*, 355 F.3d 1040, 1044 (7th Cir. 2004) (same); *United States v. Hall*, 312 F.3d 1250, 1263 n.17 (11th Cir. 2002) (same)).

Because Walters does not explain how these arguments apply to his sentence, his claim is best interpreted as a facial challenge to § 2G2.2(b)(6).

Walters' challenge lacks the facts or law necessary to succeed. In drafting § 2G2.2, the Sentencing Commission explicitly considered whether the computer enhancement would be frivolous. *See* U.S.S.G. App. C, Amend. 664, pp. 58-59. The Commission purposefully set both the base offense level and the degree of enhancement with the frequency of computer use in mind. *Id*. We have adopted that rationale and rejected arguments that the computer enhancement should not be used simply because it is applied frequently. *See, e.g.*, *United States v. Cunningham*, 669 F.3d 723, 732-33 (6th Cir. 2012) (affirming the district court's rejection of defendant's argument "that the frequency with which the enhancements applied in other cases rendered them invalid").

Contrary to Walters' suggestion that computer images are no more permanent than physical ones, the enhancement exists because the electronic nature of some videos makes them easier to duplicate and distribute over time and across geography. There is a quantifiable cost to copying, sending, saving, and cataloging physical materials. No comparable cost exists when it comes to downloading, saving, and sharing electronic materials like those Walters had in his possession.

It is often said that once a photo is online, it exists forever. Peer-to-peer software like that Walters used ensures as much: two people on opposite sides of the globe can instantaneously search, send, receive, and save materials at the click of a mouse. The enhancement remains relevant—regardless of its frequency of application—because the harm it addresses is real. And as the district court explained during sentencing, the enhancement applies in Walters' case not because he used a computer, but because his use of a computer ensured that thousands of people had access to videos of children being sexually assaulted over the course of 2012. (R.42, Page ID #192-93 ("It's not unusual to have people commit crimes from the convenience and privacy of their home, the computer and Internet makes that possible nowadays. . . . You can do what you want and nobody is going to find out, and you don't think you're harming anybody by doing that, but just the opposite is true.").) The district court did not abuse its discretion in applying the enhancement for computer use to Walters' sentence.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

---

**CONCURRENCE**

---

HELENE N. WHITE, Circuit Judge, concurring. As the dissent points out, the Guidelines applicable to convictions under the Protect Act do not reflect the considered judgment of the Sentencing Commission, and in this regard differ from other Sentencing Guidelines. To be sure, the Guidelines are not binding and judges are free to depart and vary from them. But many judges are hesitant to second guess the Commission's judgment due to the presumed experience, expertise, and breadth of information possessed by the Commission. The appropriate judicial response in situations such as this one is not for appellate courts to reduce Guidelines sentences as a matter of course, but rather, for sentencing judges to recognize that Guidelines based on the Protect Act should be carefully scrutinized. Unfortunately, as the dissent observes, Walters' counsel did not bring to the district court's attention, or argue on appeal, that the Commission considers the sentence recommended here to be excessive. In the context of a sentencing proceeding in a child pornography case, competent counsel should be expected to bring to the district court's attention that the Guidelines do not, as in other contexts, reflect the presumed superior expertise and breadth of information of the Commission, and in fact are contrary to the Commission's considered judgment. That, however, is a matter Walters must properly raise in a petition under 28 U.S.C. § 2255.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting.  I regard the 12-plus years of incarceration the defendant Walters received as a vast over-criminalization of the wrong involved, a sentence vastly disproportionate to the crime.  Walters downloaded a group of photos from the large inventory of child porn photos on the Internet.  He is not a pedophile.  He has not physically abused anyone.  He is a young man with a wife and children whom he has not abused.  He did not, in fact, pass the photos on to anyone else; and he did not, in fact, have anything to do with their production.  He paid nothing to download the photos.  He did not enter the commercial market for child porn.

What he did is to look at photos that we would find disgusting and criminally produced.  For someone to presumably enjoy looking at them offends us, although we do not know his state of mind for it is a strict liability crime.  To assert, however, that the defendant "caused" the production of the photos fabricates "causation."  It is a rationalization arising from our disgust and disapproval.

Many of the groups of officials and experts who have looked into the problem of Internet child porn have reached the conclusion that the sentencing guidelines that the District Court and our Court have now enforced in this case should be greatly reduced.  Most importantly, these groups include the Sentencing Commission itself, which has conducted an extensive study and then issued a 350 page Report in 2012 entitled "Federal Child Pornography Offenses" [available at: http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses].  The Report asks Congress to remove the harsh Protect Act provisions that ordered the Sentencing Commission in 2003 to write guidelines recommending to judges the imposition of sentences such as the 12-plus year sentence in this case.  The report is based in part on the refusal of a sizeable majority of judges to follow the guidelines[1] and the opinion of experts in the field, including psychologists, medical experts and

---

[1]A majority of federal judges reject the receipt and possession guidelines in both theory and practice.  More than two-thirds of judges responding to a Sentencing Commission survey in 2010 believed that the guideline ranges

legal scholars who have studied the problem.[2]    The Commission's study arrived at the conclusion that the present child porn guidelines have "no rational basis," are "outmoded," do not "distinguish adequately among offenders based on their degrees of culpability," and have "enhancements," like the ones in this case, that are "outmoded and disproportionate."    The disagreement with the guidelines for nonproduction offenders is widespread.  The Report at page xxi concludes in part:

> Numerous stakeholders—including the Department of Justice, the Federal Defender community, and the Criminal Law Committee of the Judicial Conference of the United States—have urged the Commission and Congress to revise the nonproduction sentencing scheme to better reflect the growing body of knowledge about offense and offender characteristics and to better account for offenders' varying degrees of culpability and dangerousness.

Unfortunately, the Department of Justice has not adequately communicated its position to its United States Attorneys, and so we keep getting cases like this one.

It seems obvious that nothing is going to soon change the injustices such as this one that are going on every day in the federal courts—unless the courts themselves find a solution that at least ameliorates the problem for the time being.  Defense counsel in this case did not provide the courts with an adequate rationale for changing the guideline *status quo* and did not point out the Report to the trial judge or to us.  He simply argued that the guideline sentence in this case is "unfair" and violates "due process," but without further elaboration.

There is a partial solution available.  The Supreme Court has recently summarized in *Miller v. Alabama*, 132 S. Ct. 2455, 2463 (2012), the constitutional principles that should guide

---

and applicable mandatory minimums for those offenses "were too high." *2012 Report at* 11 n.64.  After accounting for deliberate undercharging by some U.S. Attorneys and plea agreements based on factual guideline stipulations, as well as departures and variances by judges, the result was that almost four out of every five offenders were sentenced below those dictated by a mechanistic guideline calculation like the one in this case. *Id.* at 225 (figure 8-12).  In light of this widespread judicial rejection of the guidelines, the sentencing judge's conclusion that a guideline sentence was appropriate for Walters because there was "[n]othing remarkable about his situation" illustrates the failure of these guidelines when judges defer to the algorithm without considering whether the result is just.  The widespread nullification of these guidelines means that "[i]t is . . . not that a defendant who is sentenced by a judge willing to reject the guideline is lucky . . . it is more apposite that the defendant who is sentenced by a judge following the guideline is unlucky."  Melissa Hamilton, *Sentencing Adjudication:  Lessons from Child Pornography Policy Nullification*, 30 Ga. St. U. L. Rev. 375, 460 (2014).

[2]*See, e.g.,* 2012 Report at 73-106 (describing child pornography offender behavior); *id.* at 169-204 (describing research on prior criminal sexually dangerous behavior by non-production offenders); *id.* at 277-87 (assessing best practices for treating disorders associated with child pornography offenders); *id.* at 312-20 (summarizing "Recommendations to Congress" and empirically supporting conclusions contradicting underlying premises of the current guidelines).

us when a sentence is extreme and lacking any "rational basis," as the Sentencing Commission and other experts in the field have found:

> The Eighth Amendment's prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions." That right, we have explained, "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned' to both the offender and the offense." "[T]he concept of proportionality is central to the Eighth Amendment." And we view that concept less through a historical prism than according to 'the evolving standards of decency that mark the progress of a maturing society.' (Omitting citations.)

If ever a sentence should be labeled "excessive" and "out of proportion" to the "offender and the offense," and outside "evolving standards of decency," it is the 12-plus years of imprisonment imposed in this case on a young man and his family because he downloaded a group of deviant and disgusting child porn photographs. I am sorry that our panel has not acted to at least reduce the sentence to the five-year mandatory minimum and to express its disagreement with this unjust sentence.